GLASS DESIGN IMPORTS,
INC., Plaintiff,

v.

RASTAL GmbH & CO. KG, et
al., Defendants.

No. 85–0669–CV–W–1–5.

United States District Court,
W.D. Missouri, W.D.

Oct. 16, 1987.
As Amended Oct. 21, 1987.

Michael Thompson, Marie Gockel, Mitchell, Kristl & Lieber, Kansas City, Mo., for plaintiff.

Richard Routman, Kevin C. Travis, Grier & Swartzman, Kansas City, Mo., for defendants, Charles H. Riley, Jr., Ganz, Ham & Riley, Boston, Mass., for defendants Hall, Lepere & Rastal.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Defendants Rastal GmbH & Co. KG, Import Specialties, Gene Lepere, Robert Hall and Educators Publishing Service, Inc., have moved this Court for judgment notwithstanding the verdict (JNOV) pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, or, in the alternative, to amend the judgment or grant a new trial, as provided for in Rule 50(b) and Rule 59.

The defendants' motion for JNOV essentially argues that, as a matter of law, the evidence is insufficient to support the verdicts for plaintiffs on their claims for actual damages for fraudulent misrepresentation, tortious interference with a business expectancy, and breach of contract, as well as the awards for punitive damages. In support of their alternative motion for modification of judgment, defendants contend that the judgments for fraud, breach of contract, and tortious interference are duplicative, resulting in an overlap of damages. Finally, as an alternative to JNOV, a new trial is requested to eliminate the possibility of duplicative actual and punitive damage awards.

For the reasons set forth below, the motion for JNOV shall be sustained in part and overruled in part; the motion for new trial shall be overruled; and the judgment shall be modified.

## I. Standards for Determining Motions for Judgment Notwithstanding the Verdict and for a New Trial

A motion for judgment notwithstanding the verdict challenges the sufficiency of the evidence to support the jury's verdict. *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 252, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940). It is well-settled that motions for JNOV should be granted sparingly since such rulings deprive the plaintiff of a determination by a jury. *Cleverly v. Western Electric Co.,* 594 F.2d 638, 641 (8th Cir.1979); *Farner v. Paccar,* 562 F.2d 518, 522 (8th Cir.1977).

In passing on such motions, the trial court must consider the evidence in the light most favorable to the party or parties who prevailed with the jury, drawing all reasonable inferences favorable to the non-mover. *Stafford v. Neurological Medicine, Inc.,* 811 F.2d 470, 473 (8th Cir.1987). The Court must neither determine the credibility of witnesses nor substitute its choice for the jury's when examining conflicting evidence. *Id.; Brown v. Syntex Laboratories, Inc.,* 755 F.2d 668, 671 (8th Cir.1985); *Jasperson v. Purolator Courier Corp.,* 765 F.2d 736, 741 (8th Cir.1985).

These guidelines must be followed by the Court in determining whether "substantial evidence" supports the jury's findings. If

so, the Court must then examine whether those factual findings support the legal conclusion drawn by the jury in reaching the verdict. *Stafford,* 811 F.2d at 473; *Hannah v. Haskins,* 612 F.2d 373, 376 (8th Cir.1980). "Substantial evidence" is such relevant evidence as might be accepted by a reasonable mind as adequate to support the verdict. *Perkin-Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 893 (Fed. Cir.1984). The motion for JNOV must be denied if, in reviewing the evidence according to the above standards, reasonable jurors could differ as to the conclusions drawn from it. *Stafford,* 811 F.2d at 473.

While a motion for judgment notwithstanding the verdict is addressed to the sufficiency of evidence, a motion for new trial asserts that the verdict was against the weight of the evidence or that, for other reasons of law, the trial was manifestly unjust. *Montgomery Ward,* 311 U.S. at 252, 61 S.Ct. at 194. The granting of a new trial rests within the discretion of the trial court. *Fireman's Fund Insurance Co. v. Aalco Wrecking Co.,* 466 F.2d 179 (8th Cir.1972). However, the new trial should be ordered only if the verdict was against the "clear weight," "overwhelming weight" or "great weight" of the evidence. *Id.* "Such a determination ... involves a judicial balancing by the district court as to whether the first trial resulted in a miscarriage of justice." *Goldsmith v. Diamond Shamrock Corp.,* 767 F.2d 411, 416 (8th Cir.1985). A new trial should not be granted merely because the Court feels that another result was more reasonable. *Fireman's Fund,* 466 F.2d at 186.

## II. Fraudulent Misrepresentation

Instruction No. 12, the verdict director for fraudulent misrepresentation, set forth the following elements:

Your verdict must be for plaintiff if you believe:

First, either:

(1) Defendants represented to plaintiff that plaintiff would represent Rastal on an exclusive basis in the United States gift market (except with respect to domestic breweries), intending that plaintiff rely upon such representation in de-ciding to market and sell Rastal products; or

(2) Defendants represented to plaintiff that the products of Rastal were manufactured by Rastal in West Germany, intending that plaintiff rely upon such representation in deciding to market and sell Rastal products; and

Second, either or both of such representations were false; and

Third, defendants knew that either or both of the false representations were false, or were aware that they did not know whether either or both of the false representations were true or false; and

Fourth, either or both of the representations found to be false were material to plaintiff's decision to market and sell Rastal products; and

Fifth, plaintiff relied on either or both of the false representations in agreeing to market and sell the products, and in so relying plaintiff was using ordinary care; and

Sixth, as a direct result of either or both false representations, the plaintiff was damaged.

Defendants contend that the verdict against all defendants and in favor of plaintiff on this claim cannot be sustained because the evidence did not support either of the two alternative theories of fraud, that plaintiff did not prove any damage by the alleged fact that certain products were not made in Germany, and that plaintiff could not have relied on a representation that the products were made in Germany when it agreed to market and sell the products.

■ Here, the defendants attempt to relitigate issues which the jury resolved against them. Such arguments must fail. There was sufficient evidence introduced whereby the jury could find that defendants misrepresented either the exclusive nature of the retail marketing agreement or the place where the Rastal products were manufactured.

■ There was also evidence that Glass Design would not have incurred the expenses to market the products if it had known that Rastal was not the manufactur-

er and sole source of its goods. "The maker of a fraudulent representation is liable for pecuniary loss suffered by one who justifiably relies on the misrepresentation if the reliance is a *substantial factor* in determining the course of conduct that results in the loss." *Total Petroleum, Inc. v. Davis*, 788 F.2d 476, 482 (8th Cir.1986) (emphasis supplied).

■ Instruction No. 14 instructed the jury that plaintiff's damages on this claim would be "such amounts which are the direct result of plaintiff having acted on the truth of the false representation(s)." This instruction clearly sets forth the correct measure of damages based on "out-of-pocket" losses. *Central Microfilm Service v. Basic/Four Corp.*, 688 F.2d 1206, 1220 (8th Cir.1982). Plaintiff's damage witness, George Arneson, testified to the following elements of damages:

| | | |
|---|---|---|
| (1) | Salaries and Benefits Foregone | $163,000.00 |
| (2) | Loan Losses | 74,000.00 |
| (3) | Capital Investment | 3,000.00 |
| (4) | Legal Expenses | 5,000.00 |
| (5) | Lost Profits on Direct Sales | 81,000.00 |
| | Total | $326,000.00 |

■ The first four elements are properly considered "out-of-pocket" losses in reliance on defendants' representations. The lost profits, however, represent damages under an alternative "benefit of the bargain" theory. *See Kerr v. First Commodity Corp.*, 735 F.2d 281, 285 (8th Cir.1984); *Central Microfilm*, 688 F.2d at 1220–21; *Robinson v. Highway Management Systems, Inc.*, 583 F.Supp. 1558, 1559 (W.D. Mo.1984). Thus, evidence of the amount of "out-of-pocket" losses is limited to $245,-000, the total expenses and losses excluding lost profits.

■ A jury verdict is deemed to be excessive if it exceeds the amount claimed in the petition or supported by evidence. *Larabee v. City of Kansas City*, 697 S.W.2d 177, 181 (Mo.Ct.App.1985). The jury's assessment that actual damages for fraud totalled $250,000.00, though excessive, does not warrant an entry of judgment notwithstanding the verdict or new trial. A new trial for an excessive verdict should be granted only where the verdict is so grossly excessive that it indicates bias and prejudice. *England v. Gulf & West Mfg. Co.*, 728 F.2d 1026, 1029 (8th Cir. 1984). However, the $5,000.00 inconsistency between the amount of actual damages awarded on the fraud verdict and the out-of-pocket losses proved at trial may be remedied by remittitur. *See Morrill v. Becton, Dickinson and Co.*, 747 F.2d 1217, 1224 (8th Cir.1984). "Despite the apparent abolition of remittitur in Missouri state courts, *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99, 110 (Mo. 1985), remittitur is still available in federal court." *American Business Interiors v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir.1986). Viewed in the light most favorable to plaintiff, the evidence is sufficient to sustain actual damages in the amount of $245,000.00 on the claim for fraudulent misrepresentation.

■ Finally, defendants assert that plaintiff could not have relied on the April, 1981 representation that Rastal products were made in Germany, because plaintiff had already agreed to market and sell the goods in March, 1981. The jury, however, determined otherwise. Their response to a special interrogatory was that an agreement between Glass Design and Rastal was not reached until April, 1981. Moreover, there was sufficient evidence that plaintiff did, indeed, rely on such representation.

### III. Tortious Interference with a Business Expectancy

In support of their motion for JNOV or new trial on the claim for tortious interference, defendants contend that plaintiff failed to prove that defendant Gene Lepere acted "without justification."

In *Conoco, Inc. v. Inman Oil Co.*, 774 F.2d 895 (8th Cir.1985), the Eighth Circuit Court of Appeals cited with approval the Restatement (Second) of Torts, § 766 (1977), which provides that intentional interference with a valid business expectancy is *not improper*, (and thus justified), if:

(a) the relation concerns a matter involved in the competition between the actor and the other, *and*

(b) the actor does not employ *wrongful means*, and

(c) his action does not create or continue an unlawful restraint of trade *and*

(d) his purpose is at least in part to advance his interest in competing with the other.

*Conoco*, 774 F.2d at 907 (emphasis supplied). Each of these elements must be satisfied in order for the interference to be privileged.

■ The Court is convinced, however, that there was ample evidence that Gene Lepere employed "wrongful means" in making the direct sale of Kurfurst Seidels to the Walter Cribbins Co. The jurors could infer from circumstantial evidence that Lepere lied to Glass Design when he stated that this merchandise was not in stock or available.

"Wrongful means" are "means which are intrinsically wrongful—that is, conduct which is itself capable of forming the basis for liability for the actor." *Id.* at 907. Fraudulent misrepresentations clearly qualify as "wrongful means." *Id.*, n. 9 *citing Shell Oil Co. v. State Tire & Oil Co.*, 126 F.2d 971 (6th Cir.1942) (solicitation of customers coupled with misrepresentations was unlawful). Hence, Lepere's actions were not "privileged" as a matter of law.

### IV. Breach of Contract

Defendants set forth two unpersuasive arguments in their motion for JNOV or new trial on plaintiff's claim for breach of contract. First, it is contended that any exclusive distributorship rights were terminated in June, 1982. Second, defendants attempt to resurrect the statute of frauds defense to preclude consideration of the oral agreement between the parties, reached in Toronto in April, 1981.

In order to return a verdict for plaintiff on the breach of contract claim, Instruction No. 9 required the jury to find that the parties modified their agreement to provide for an exclusive dealership in the retail trade. William Harsh testified that such was the case. Defendants' memo regarding cancellation of sole distributing rights was apparently interpreted by the jury as consistent with this. As stated above, the Court must not determine the credibility of witnesses or disturb the jury's choice when examining conflicting evidence. *Stafford*, 811 F.2d at 473. Moreover, the jury's responses to special interrogatories 1, 2 and 3 renders the statute of frauds inapplicable in this case.

Although substantial evidence supports a verdict for plaintiff on the contract claim, the amount of damages must be remitted to $245,000.00, the out-of-pocket losses incurred by Glass Design. The reasoning set forth above in the discussion of damages on the fraud claim also applies to contract damages. *See also Central Microfilm*, 688 F.2d at 1220.

### V. Punitive Damages

■ Finally, defendants challenge the propriety of the punitive damage awards against all defendants on the fraud claim and against Lepere for tortious interference. It is clear that "partners" may be individually liable for punitive damages due to a co-partner's willful tort if the wrongful act was within the scope of the wrongdoer's authority. *Rogers v. Hickerson*, 716 S.W.2d 439, 447 (Mo.Ct.App.1986). There was uncontradicted evidence that defendants Lepere, Hall and Educators Publishing Service agreed to share profits in their business, under the name Import Specialties. Thus, these three defendants acted essentially as partners, each liable for punitive damages. However, Import Specialties itself is not a separate legal entity, and thus cannot also be liable for punitive damages already assessed against each partner. Thus, JNOV will be entered in favor of Import Specialties on the claim for punitive damages for fraud.

The Court rejects the defendants' other allegations related to punitives. The awards tendered against Lepere for the tortious interference and fraud claims are entirely distinct, and involved different elements of proof.

■ Instruction No. 16 defined "malicious" as "... the doing of a wrongful act

intentionally without just cause or excuse." This is the proper standard in Missouri for punitive damages except for malicious prosecution actions arising from criminal proceedings. *Brown v. New Plaza Pontiac Co.*, 719 S.W.2d 468, 472 (Mo.Ct.App. 1986); *see also Proctor v. Stevens Employment Services, Inc.*, 712 S.W.2d 684 (Mo. 1986).

### VI. Modification of Judgment

■ Although Glass Design's recovery in fraud does not necessarily preclude its recovery in contract, a plaintiff may not recover in excess of its actual injury. *Clayton Brokerage Co. of St. Louis, Inc. v. Pilla*, 632 S.W.2d 300, 306 (Mo.Ct.App. 1982). Here, plaintiff was permitted to submit on both theories, while proving a single item of damages. Thus, Glass Design will be required to elect between the fraud or contract verdicts. It may *not* recover double damages. However, different damages were proven on the tortious interference theory. Hence, plaintiff may recover on either contract or fraud in addition to its award on the claim for tortious interference.

Accordingly, it is hereby

ORDERED that defendants' motion for JNOV is overruled except that judgment notwithstanding the verdict is sustained for Import Specialties solely on the issue of punitive damages on the fraud claim. It is further

ORDERED that the motion for new trial is overruled, provided that plaintiff agrees that the actual damages for fraudulent misrepresentation or breach of contract shall be remitted by $5000.00, thus limiting the total of such actual damages to $245,-000.00. It is further

ORDERED that plaintiff may recover damages on *either* the jury verdict for fraud or contract. Plaintiff may also recover on the verdict for tortious interference.