867 F.2d 1139
 GLASS DESIGN IMPORTS, INC., Appellee,
v.
IMPORT SPECIALTIES, Gene Lepere, Robert G. Hall and
Educators Publishing Service, Inc., Appellants.
GLASS DESIGN IMPORTS, INC., Appellant,
v.
IMPORT SPECIALTIES, Gene Lepere, Robert G. Hall and
Educators Publishing Service, Inc., Appellees.
 Nos. 87-2703, 88-1078.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 21, 1988.
Decided Feb. 14, 1989.
Rehearings and Rehearing En Banc Denied April 12, 1989.
 
 Charles Thomas, Kansas City, Mo., for appellants Import Specialties, et al.
 Marie L. Gockel, Kansas City, Mo., for appellee Glass Design Imports, Inc.
 Before HEANEY,* and BOWMAN, Circuit Judges, and ROSS, Senior Circuit Judge.
 ROSS, Senior Circuit Judge.
 
 I.
 
 1
 Gene Lepere, Robert Hall, Educators Publishing Service, Inc. (EPS) and their business, Import Specialties, appeal from the district court's order entering judgment upon a jury verdict awarding both actual and punitive damages in favor of Glass Design Imports, Inc. on Glass Design's claims of fraud and tortious interference with business expectancy. In this diversity case, the defendants filed timely appeal of the denial of their motions for judgment notwithstanding the verdicts. Glass Design has filed a cross-appeal.
 
 II.
 
 2
 Rastal GmbH & Co. KG is a West German corporation in the business of manufacturing and selling glassware. Plaintiff/appellee/cross-appellant Glass Design is a Missouri corporation which alleged that Rastal and its American agent, Import Specialties, made fraudulent representations and breached an agreement that Glass Design would be the exclusive distributor of Rastal products in the United States. Other named defendants, Lepere, Hall, and EPS have a financial stake in Import Specialties. At trial, Rastal was also a named defendant. The jury entered a verdict of $250,000 against Rastal on a breach of contract claim. It also entered a verdict of $250,000 for Glass Design against all defendants on the fraud count and $30,000 punitive damages against each defendant. The district court reversed the $30,000 punitive damage award against Import Specialties as it was unincorporated and thus not susceptible to punitive damages. On the tortious interference claim, $1,000 in actual damages and $10,000 in punitive damages were also awarded against Lepere.
 
 
 3
 After post-trial motions, Glass Design was to receive $245,000 on either the contract or fraud claim but not both. The punitive damage awards and awards against Lepere were not altered. The rendered opinion is reported at Glass Design Imports, Inc. v. Rastal GmbH & Co. KG, 672 F.Supp. 419 (W.D.Mo.1987). Rastal has settled with Glass Design. The remaining defendants prosecute this appeal.
 
 
 4
 Lepere had been marketing Rastal products since 1979. In 1980 Robert Sullivan first met Lepere at a St. Louis beer wholesaler's convention where Lepere was displaying Rastal products. In January 1981 Sullivan called Lepere and said he would be interested in handling Rastal products. Lepere sent Sullivan a letter dated January 7, 1981, thanking him for his interest, along with two accompanying Rastal catalogs containing pricing and duty information.
 
 
 5
 In February 1981 business negotiations commenced in Kansas City between the three principals of Glass Design (Robert Sullivan, Thomas Sullivan and William Harsh), and Lepere of Import Specialties. In April the parties again met in Toronto along with Lambert Diks of Rastal and orally agreed that Glass Design would be the sole importer of Rastal products with the exception of pre-existing Rastal customers and breweries (marketed by Lepere). Glass Design understood that the products were made by Rastal in Germany and that it was to exclusively control United States retail distribution.
 
 
 6
 It appears that numerous representations were made by Diks in this regard. Evidence of representations made by Lepere, however, was less clear. Harsh testified that "the basic agreement that we reached in Toronto was that we would be the exclusive distributor in the United States of America." When asked about discussions of the products' country of origin, Thomas Sullivan responded "Bill Harsh asked on a lot of different items as he was looking at [Diks and Lepere] and every answer was [that the products were] made in West Germany."
 
 
 7
 The representation about origin of the products continued in a "write-up" sent by Lepere to Glass Design in June 1981. The write-up contained promotional literature for possible use in Glass Design's catalog. It described Rastal as having its own artisans for making and manufacturing mouth-blown molten glass creations.
 
 
 8
 In August merchandise arrived in Glass Design's warehouse with some cartons marked "made in Czechoslovakia." The "made in West Germany" stickers had fallen off the boxes. Further, invoices from Rastal depicted the products as having been made in West Germany. A promotional film stated that the Rastal factory produces glass both by hand and by machine.
 
 
 9
 At trade shows, Glass Design soon became aware that it was not the sole Rastal distributor in the United States. It discovered that other buyers had also received the merchandise. Its inquiry culminated in a meeting in Germany where it found that Rastal was not capable of blowing glass, nor had it had the facilities for many years. The two alternate fraud theories of place of manufacture and exclusivity were submitted to the jury.
 
 
 10
 The tortious interference claim against Lepere arose from the factual setting in which Walter Cribbins Company sought to purchase 200 beer steins from Glass Design. Glass Design had none in stock so called upon Lepere who informed that Import Specialties also had none. Later Lepere himself made the sale to the company without a commission to Glass Design although Glass Design had arranged the sale.
 
 
 11
 The fraud theories were submitted to the jury in the disjunctive. By special interrogatories, the jury determined that the parties entered into their agreement in April 1981 in Toronto. As to damages, Glass Design's witness, George Arneson, testified to the following elements:
 
 
 12
 (1) Salaries and Benefits Foregone $163,000.00
(2) Loan Losses 74,000.00
(3) Capital Investment 3,000.00
(4) Legal Expenses 5,000.00
(5) Lost Profits on Direct Sales 81,000.00
 -----------
 TOTAL $326,000.00
 
 
 13
 Defendants objected to the expert opinion evidence on tangible losses based upon the facts the expert witness was asked to assume.
 
 
 14
 Upon the jury's award of $250,000, a $5,000 remittitur was ordered to make the amount $245,000 ($326,000 less $81,000 lost profits). For reversal the defendants argue the wrongful denial of their motions for judgment notwithstanding the verdicts as follows:
 
 
 15
 (1) The district court erred in failing to enter a judgment notwithstanding the fraud verdict in favor of the defendants.
 
 
 16
 (2) The district court erred in failing to remit $163,000 from the fraud verdict and in failing to limit Glass Design to $81,000 "benefit of the bargain" actual damages on the fraud verdict.
 
 
 17
 (3) The district court erred in failing to enter a judgment notwithstanding the verdict in favor of defendants Hall and EPS on the punitive damage awards for fraud.
 
 
 18
 (4) The district court erred in failing to grant a judgment notwithstanding the verdict in favor of Lepere on the tortious interference verdict.
 
 
 19
 On cross-appeal, Glass Design asserts the district court erred in failing to submit tendered instruction Nos. 1-9 regarding a breach of contract claim against defendants Import Specialties, Lepere, Hall, and EPS. We affirm in part and reverse in part.
 
 III.
 
 20
 The misrepresentations as to origin of the products and exclusivity of the distributorship were both numerous and ongoing. In its reply brief, the defendants note that the important date of April 1981 must be the focal point as that was when the Toronto meeting occurred and the arrangement was established. They attempt to place the blame on Diks who indicated that Germany was the country of origin.
 
 
 21
 Secondly, the defendants contend that the only possible construction of fraud by Lepere could be fraud by concealment or silence. They insist that Lepere made no affirmative representations at the Toronto meeting and the issue of fraud by concealment was not pleaded or submitted to the jury.
 
 
 22
 Glass Design points to the fact that Lepere had worked for Rastal since 1979 and must have known the origin of the goods. Lepere maintained regular phone contact with Diks and knew the difference between a column one country and a column two country (countries with different tariffs or duties owed on samples brought into the United States based in part on the samples' country of origin). Lepere's deposition testimony revealed that he "perhaps" knew that some Rastal products were not manufactured in West Germany in October or November 1980. Lepere had the responsibility as the representative for Rastal for the whole of the United States since 1979.
 
 
 23
 Glass Design further notes Lepere's representation that all other distributors would be "cut off" after it complained that others were marketing Rastal goods. Lepere correctly responds that any representations made after April 1981 could not have been relied upon by Glass Design in entering into the agreement.
 
 
 24
 We believe it was reasonable for the jury to infer and find that either one or both of Glass Design's two theories of fraud existed from the manifestations of the various defendants including Lepere. Falsity, knowledge of falsity, materiality, reliance, causation and damages were all present. "[F]raud may be inferred from facts and circumstances and need not be shown by direct evidence." Rogers v. Hickerson, 716 S.W.2d 439, 446 (Mo.Ct.App.1986). Proof of each element may rest upon circumstantial evidence. Martin v. Brune, 631 S.W.2d 77, 80 (Mo.Ct.App.1982). We are mindful that fraud is rarely susceptible of positive proof but must rest upon something more substantial than suspicion, surmise, and speculation. Weaver v. Travers, 631 S.W.2d 81, 83 (Mo.Ct.App.1982).
 
 
 25
 In jury-tried cases based upon fraud, the Missouri Supreme Court has stated that the burden of proof is the preponderance of the evidence standard contained in Missouri Approved Jury Instruction 3.01. Crawford v. Smith, 470 S.W.2d 529, 531-32 (Mo.1971) (en banc). Clear and convincing evidence need not be shown, as the burden of proof on fact issues in a case of fraudulent misrepresentation tried to a jury does not change with the kind of case to be tried. Id.
 
 
 26
 After reviewing the evidence set forth in light of the applicable standards, we conclude that the district court committed no error in denying the defendants' jnov motion. The granting of a motion for judgment notwithstanding the verdict is appropriate "only if the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." Rule v. Lutheran Hospitals & Homes Soc., 835 F.2d 1250, 1252 (8th Cir.1987). Viewing the evidence and resolving all factual disputes in the light most favorable to the party opposing the motion, as we are required to do on appeal from the denial of a motion for judgment notwithstanding the verdict, id., we cannot say that the evidence points solely in favor of the defendants.
 
 IV.
 
 27
 The damage instruction given to the jury clearly set forth the measure of damages as "such amounts which are the direct result of plaintiff having acted on the truth of the false representation(s)." The first four elements are properly categorized as "out of pocket" or reliance damages while the lost profits represent "benefit of the bargain" damages. The out of pocket losses total $245,000, the amount of the jury verdict less the $5,000 remittitur.
 
 
 28
 The defendants contend that the $163,000 in foregone salaries was improperly awarded. We agree. Certainly the principals of Glass Design were not entitled to set salaries, rather, salaries are dependent upon profits and as investors they impliedly assumed the risk of the success or failure of their venture. There has been no "but for" showing that the fraud caused the entire loss of salaries and we find no authority for such an award. We deem the $163,000 an impermissible measure of damages and reverse the jury's award to this extent.
 
 
 29
 The traditional benefit of the bargain measure is the general rule in Missouri. See Walsh v. Ingersoll-Rand Co., 656 F.2d 367, 371 (8th Cir.1981); Smith v. Tracy, 372 S.W.2d 925, 938 (Mo.1963). The bargain theory measure is the difference between the actual value and the represented value of the subject of the transaction. An alternate measure is permitted, however, where the bargain theory would not accurately measure the loss sustained. Central Microfilm Serv. v. Basic/Four Corp., 688 F.2d 1206, 1220 (8th Cir.1982), cert. denied, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983); Kerr v. First Commodity Corp., 735 F.2d 281, 285 (8th Cir.1984). We hold that rather than allowing the $163,000 in lost salaries, the district court should have allowed $81,000 for lost profits on direct sales.
 
 
 30
 Due to the peculiar circumstances and nature of the fraud in this case, some out of pocket losses are authorized. Because the defendants fraudulently induced Glass Design to become and continue as a dealer--the harm is best measured by the net losses incurred as a result. See Central Microfilm, supra, 688 F.2d at 1220-21. The district court noted that there was "evidence that Glass Design would not have incurred the expenses to market the products if it had known that Rastal was not the manufacturer and sole source of its goods." 672 F.Supp. at 421-22. Losses fell under the categories of cumulative loan losses from three years' performance covered by borrowings of the principals, initial capital stock investment, and tangible legal and professional fees not related to trial.
 
 
 31
 In sum, we decide that the $245,000 actual damage award is to be reduced to a total award of $163,000, representing $81,000 for lost profits on direct sales and $82,000 for out of pocket losses.
 
 V.
 
 32
 The defendants also complain that the punitive awards were overlapping and duplicative. Counsel had advised the jury not to be concerned about duplicating damages when looking at the separate actions, that the court would rectify any multiplicity. Thus, the defendants believe that the jury intended only a single recovery in the amount of $30,000 rather than a $30,000 assessment against each defendant. For the reasons set forth below, we agree that only one award of $30,000 in punitive damages may be assessed against the defendants Lepere, Hall, and EPS.
 
 
 33
 With respect to these defendants, the district court found that they had agreed to share profits in the business under the name of Import Specialties. In affirming the awards against them, the court said: "It is clear that 'partners' may be individually liable for punitive damages due to a co-partner's willful tort if the wrongful act was within the scope of the wrongdoer's authority. Rogers v. Hickerson, 716 S.W.2d 439, 447 (Mo.Ct.App.1986)." Glass Design Imports, supra, 672 F.Supp. at 423.
 
 
 34
 Hall is the president, treasurer, and sole shareholder of EPS. In Lepere's view, EPS is Hall. Neither Hall nor EPS were present at the Toronto meeting on behalf of Import Specialties. The defendants assert that the issue of partnership was not submitted to the jury. Hall and EPS contend that their relationship with Import Specialties may have been that of lender-borrower. Clearly they were investors in the venture; however, Hall did advise Lepere from time to time.
 
 
 35
 Instruction No. 15 submitted to the jury required a finding of "willful, wanton, or malicious" conduct on the parts of Hall and EPS before punitive damages could be assessed against them. Because no evidence was presented that these defendants made representations to Glass Design on or before April 1981, their conduct could not possibly have been "willful, wanton, or malicious."
 
 
 36
 Here, we note the correct statement of the law in this regard. Legal malice for purposes of imposition of punitive damages based on fraud, arises when there is intentional doing of a wrongful act without just cause or excuse and there need not be any showing that the act was done willfully or wantonly or with spite or ill will. Rogers v. Hickerson, supra, 716 S.W.2d at 447. The awards against Hall and EPS were inappropriate in view of the fact that the tort was done primarily by Lepere in arranging and managing the dealership. The liability of joint tortfeasors does not necessarily extend to liability for punitive damages, Fordyce v. Montgomery, 424 S.W.2d 746, 751 (Mo.Ct.App.1968); the defendants had the right to have their conduct considered separately for the purpose of determining whether or not punitive damages should have been awarded. Annbar Assocs. v. American Express Co., 565 S.W.2d 701, 710 (Mo.Ct.App.1978). A theory of vicarious liability was not presented to the jury. The jury's award was against the weight of the evidence and clearly incorrect. The district court erred in failing to enter a judgment notwithstanding the verdict on this point in regard to defendants Hall and EPS.
 
 
 37
 Therefore, the punitive damage awards against Hall and EPS are reversed. The punitive damage award against Lepere stands.
 
 VI.
 
 38
 Lepere argues that the tortious interference claim against him was based on the same conduct and damages which supported the fraud claim. The district court refused to enter a judgment notwithstanding the verdict in favor of Lepere on the tortious interference verdict, finding that "the tortious interference and fraud claims are entirely distinct, and involved different elements of proof." Glass Design Imports, supra, 672 F.Supp. at 423.
 
 
 39
 In order to establish a prima facie case of tortious interference under Missouri Law, the following elements must be proven:
 
 
 40
 (1) A contract or a valid business relationship or expectancy (not necessarily a contract);
 
 
 41
 (2) Defendant's knowledge of the contract or relationship;
 
 
 42
 (3) Intentional interference by the defendant inducing or causing a breach of the contract or relationship;
 
 
 43
 (4) Absence of justification; and
 
 
 44
 (5) Damages resulting from defendant's conduct.
 
 
 45
 American Business Interiors v. Haworth, Inc., 798 F.2d 1135, 1143 (8th Cir.1986); Quartana v. Utterback, 789 F.2d 1297, 1302 (8th Cir.1986); Fischer, Spuhl, Herzwurm & Assocs., Inc. v. Forrest T. Jones & Co., 586 S.W.2d 310, 315 (Mo.1979) (en banc). Lepere's actions constituted ample evidence that he employed "wrongful means" in making the direct sale to the company. See Conoco, Inc. v. Inman Oil Co., 774 F.2d 895, 907 (8th Cir.1985).
 
 
 46
 The essential elements of an action for fraud under Missouri law are:
 
 
 47
 (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, (9) and his consequent and proximate injury.
 
 
 48
 Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1411 (8th Cir.1987) (quoting Heitman v. Brown Group, Inc., 638 S.W.2d 316, 319 (Mo.Ct.App.1982)).
 
 
 49
 It is clear that Lepere's actions in the Walter Cribbins deal constituted conduct separate and apart from the fraudulent misrepresentations made to the principals of Glass Design on or before April 19. Punitive damages were necessary in serving to punish Lepere and deter both him and others from engaging in similar conduct in the future. See Armstrong v. Republic Realty Mortgage Corp., 631 F.2d 1344, 1351 (8th Cir.1980). "Missouri courts require a nexus between the wrong committed by the defendant and the amount of punitive damages." Kerr v. First Commodity Corp., 735 F.2d 281, 289 (8th Cir.1984). The jury has wide discretion in determining the amount of punitive damages and that determination is not to be disturbed unless it is an abuse of discretion. The award against Lepere for tortious interference and punitive damages is affirmed. See Kerr, supra.
 
 VII.
 
 50
 The submission of the breach of contract claim was correct as to Rastal. The exclusive distributorship agreement ran only between Rastal and Glass Design, thus the claim would not stand against the three principals of Import Specialties. The issue on cross appeal is without merit and the cross appeal is denied.
 
 VIII.
 
 51
 We direct the district court to amend the fraud award to the sum of $163,000 against the defendants and to amend the punitive damage awards to the sum of $30,000 against Lepere only. The tortious interference verdict of $1,000 in actual damages and $10,000 in punitive damages against Lepere remains in effect. The cross appeal of Glass Design has been considered and is denied. For the aforementioned reasons, we affirm in part, and in part, reverse.
 
 
 
 *
 The HONORABLE GERALD W. HEANEY assumed senior status on January 1, 1989