# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1069

_____

Minnesota Laborers Health     *
and Welfare Fund, Minnesota     *
Laborers Pension Fund, Minnesota     *
Laborers Vacation Fund,     *
Construction Laborers Education and     *
Training Fund of Minnesota and     *
North Dakota, Minnesota Laborers     *
Employers Cooperation and Education     *
Fund,     *
    *
        Appellants,     *
    *   Appeal from the United States
     v.     *   District Court for the
    *   District of Minnesota.
Peter M. Scanlan, doing business as     *
S.B.S. Enterprises, Specialty     *
Building Services, Inc.,     *
    *
        Appellees.     *

_____

Submitted: December 15, 2003

Filed: February 10, 2004

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.

This is an action by five benefit funds (the Funds) against Peter Scanlan, Specialty Building Services, Inc. (SBS), and SBS Enterprises. The Funds sought an order requiring SBS Enterprises to produce various business records for an audit, and a judgment for the amount found to be owed to the Funds under a union contract. The Funds moved for summary judgment on the issue of SBS's and Scanlan's liability. The district court granted summary judgment as to SBS, but denied summary judgment as to Scanlan. After the parties stipulated to the amount of SBS's liability, the district court entered a judgment, dismissing the claim against Scanlan and adopting the factual findings of the previous order pursuant to Federal Rule of Civil Procedure 52(c). We reverse and remand to the district court with directions to enter judgment against Peter Scanlan, finding him and SBS jointly and severally liable to the Funds for $223,820.18.

## I.     Background

SBS is a closely-held Minnesota corporation in which Peter, Patricia, and Marice Scanlan are shareholders. SBS Enterprises is an unincorporated entity owned by Peter Scanlan. SBS and SBS Enterprises performed final commercial cleaning services on newly completed commercial projects and on specialty floor work. Scanlan created SBS Enterprises so he could bid on union contracts.

In April of 1999, SBS Enterprises entered into a collective bargaining agreement (CBA) with the Construction and General Laborers Union Local No. 132. On the signatory page at the end of the CBA, Scanlan printed "S.B.S. Ent." as the obligated company, signed the agreement, and listed his title as "owner." In relevant part, the CBA required SBS Enterprises, on a monthly basis, to report to the Funds the hours worked by employees, and to pay the Funds for fringe benefit contributions based on the number of hours reported.

In September of 2000, the Funds filed a complaint in district court requesting that SBS and SBS Enterprises produce all employment and payroll records from April, 1999, on. The Funds wanted to conduct an audit to determine whether Scanlan had complied with the CBA. SBS produced the requested records, but SBS Enterprises apparently had no records to produce.

The Funds moved for summary judgment on whether SBS and Scanlan were liable under the CBA for the deficient fringe benefit contributions. The district court granted summary judgment as to SBS's liability, finding that SBS was the alter ego of SBS Enterprises. The court, however, denied summary judgment as to Scanlan's liability. The court found that Scanlan never operated a sole proprietorship within the context of the CBA, and that he signed the CBA to advance the interests of SBS and its employees, not himself. The court also found that because SBS Enterprises was indistinguishable from SBS, Scanlan signed the CBA as an officer of SBS rather than in his individual capacity.

Following the district court's grant of partial summary judgment, the parties stipulated that SBS owed $223,820.18 for all fringe benefit contributions, liquidated damages, interest, and attorney fees and costs. The court entered judgment against SBS for that amount. The court, however, dismissed the claim against Scanlan and, under Rule 52(c), found as a matter of law that additional testimony or evidence was not needed to determine his personal liability.

## II.    Analysis

We review findings of fact underlying judgments as a matter of law entered under Rule 52(c) for clear error, and legal conclusions de novo. See Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

## A.     Alter Ego Liability

First, the Funds argue that Scanlan is the alter ego of SBS, and as such, he is jointly and severally liable for SBS's debts. In Employee Retirement Income Security Act (ERISA) § 515 cases, we apply the corporate law standard to determine alter ego status because it "strikes an appropriate balance between the congressional intent of ERISA and the long-established principle that a corporation's existence is presumed to be separate and may be disregarded only under narrowly prescribed circumstances." Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc., 104 F.3d 1050, 1055 (8th Cir. 1997). While this circuit has never articulated the federal common law standard for piercing the corporate veil between an individual and a corporation, the Tenth Circuit has applied a two-prong test: "(i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations." NLRB v. Greater Kan. City Roofing, 2 F.3d 1047, 1052 (10th Cir. 1993). Neither party contends that SBS was a sham corporation or that the identities of SBS and Scanlan were indistinct, nor did the district court make any finding that would support such a conclusion. Accordingly, we hold that Scanlan is not the alter ego of SBS. To find otherwise would make Scanlan liable for all of SBS's debt, extending his potential liability well beyond those debts pertaining to the operation of SBS Enterprises and the CBA. The record cannot justify such a result.

Second, the Funds argue that as sole proprietor of SBS Enterprises, Scanlan is liable for the obligations of SBS. If Scanlan had formed SBS Enterprises into a separate business entity, as a sole proprietor he would be personally liable under ERISA for SBS Enterprises's debts, but not necessarily those of SBS. Cf. Kapp v. Naturelle, Inc., 611 F.2d 703, 709 (8th Cir. 1979) ("[W]hen a business is incorporated after having been conducted for a period of time as a partnership or sole

-4-

proprietorship, the partners or proprietor may remain personally liable to creditors who deal with them as before without actual or constructive notice of the incorporation."); see also Trs. of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc., 862 F.2d 1020, 1024-25 (3d Cir. 1988) (noting the general rule is that "a sole proprietor is personally liable for all debts of the business; the proprietor's personal assets and the proprietorship's business assets are legally a single financial estate"), cert. denied, 490 U.S. 1082 (1989).

**B.      ERISA Liability**

Finally, the Funds argue that Scanlan, as the signatory employer, is liable under ERISA §  515, for the fringe benefit contributions.  ERISA § 515 states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  "Employer" is defined as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). "Person" means "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. § 1002(9).

We have already determined that "corporate officers cannot be held personally liable under ERISA where there is no basis for piercing the corporate veil." Rockney v. Blohorn, 877 F.2d 637, 643 (8th Cir. 1989).  Thus, if Scanlan had signed the agreement as an officer of SBS, he could not be held personally liable for the fringe

benefit contributions unless the corporate veil of SBS as to Scanlan had been pierced. Here, the district court only pierced the corporate veil of SBS Enterprises as to SBS We find, however, that the district court clearly erred in concluding that Scanlan signed the CBA only as an officer of SBS.

The district court did not make any findings of fact regarding Scanlan's motive for signing the CBA. The court merely asserted that because SBS Enterprises is indistinguishable from SBS, "it follows that Scanlan for all practical purposes signed the CBA as an officer of SBS, Inc." (Dist. Ct. Order Feb. 4, 2002, at 5.) Neither party disputes that Scanlan was the sole owner of SBS Enterprises. Scanlan designated himself as "owner" when he signed the CBA and admitted in his deposition that he was the sole owner of the business. It is true that Scanlan's status as owner of SBS Enterprises probably afforded him no personal benefit beyond what he received as an officer of SBS because the proceeds of union contracts were deposited into SBS's bank account. However, the district court also found that Scanlan intended to form a separate business entity:

> There is no evidence that SBS Enterprises as a business took any kind of action other than signing the CBA, and SBS, Inc., managed and controlled every obligation SBS Enterprises had under the CBA. Although Scanlan asserts, and the Funds do not deny, that he intended to establish SBS Enterprises as a separate concern to accommodate his union employees, that intent does not excuse Scanlan from the practical necessity of operating SBS Enterprises as an independent business.

(Id. at 4.) In light of this finding, it is clear that Scanlan intended to sign the CBA as the owner of SBS Enterprises, and not as an officer of SBS. Further, the record indicates that SBS Enterprises operated as a separate business entity to the extent that Scanlan relied upon SBS Enterprises to procure union contracts. While the omission of "corporate officers" from the definition of "person" implies that Congress wanted to protect corporate officers from liability, the plain text of the same statutory

provision clearly indicates that Scanlan, as the owner of an unincorporated organization, is subject to ERISA liability. See 29 U.S.C. § 1002(9). This intent is evidenced by the inclusion of "individual" and "unincorporated organization" in the list of those defined as "persons." Id.

Scanlan relies on Operating Engineers Pension Trust v. Reed, 726 F.2d 513 (9th Cir. 1984), Audit Services, Inc. v. Rolfson, 641 F.2d 757 (9th Cir. 1981), and Seymour v. Hull & Moreland Engineering, 605 F.2d 1105 (9th Cir. 1979), for the proposition that merely signing a CBA does not make the signatory jointly and severally liable for obligations set forth in the CBA. Reed and Seymour, however, pertained to situations in which a sole proprietorship or a partnership was formed initially, but then was incorporated. See Reed, 726 F.2d at 514; Seymour, 605 F.2d at 1108. Rolfson also does not instruct us, as it dealt with piercing the veil of a formed corporation. Rolfson, 641 F.2d at 759, 764.

Unlike the defendants in the Ninth Circuit cases, Scanlan attempted to operate two separate business entities simultaneously. Scanlan never indicated to the Funds that a different business entity was assuming the CBA obligations, and he represented to the Funds, by signing the CBA as owner, that he and SBS Enterprises were responsible for meeting the terms of the CBA. Therefore, we hold that Scanlan is liable for fringe benefit contribution as set forth in the terms of the CBA.

## C.    Amount of Liability

At oral argument, the Funds' attorney suggested that if Scanlan was found liable, remand would not be necessary because the amount of damages had been conceded through the parties' stipulations. We agree with this assessment. The parties to this litigation, which included Scanlan, stipulated that under the CBA, SBS owed the Funds $223,820.18 for the total amount of fringe benefit contributions,

liquidated damages, interest, and attorney fees and costs. We find that Scanlan is jointly and severally liable for this amount.

## III. CONCLUSION

For the reasons discussed above, we reverse the district court's order and remand with instructions to enter judgment against Peter Scanlan, finding him and SBS jointly and severally liable to the Funds for $223,820.18, the amount to which the parties stipulated.

_____