# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6014

_____

| | | |
|---|---|---|
| In re:  James Joseph Gilmartin;<br>Nawana Maria Gilmartin | * | |
| | * | |
| | * | |
| Debtors | * | |
| | * | |
| Larry M. Bauer; Cheryl L. Bauer | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiffs - Appellants | * | Eastern District of Missouri |
| | * | |
| v. | * | |
| | * | |
| James Joseph Gilmartin; | * | |
| Nawana Maria Gilmartin[1] | * | |
| | * | |
| Defendants - Appellees | * | |

_____

Submitted:  October 27, 2011
Filed: November 16, 2011

_____

Before KRESSEL, Chief Judge, FEDERMAN and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

_____

[1] Although Nawana Maria Gilmartin was identified as an Appellee in the Notice of Appeal, counsel for the Bauers advised the court at oral argument that the Bauers were not pursuing an appeal as to her.

This is an action for nondischargeability. Larry and Cheryl Bauer appeal from the Judgment of the Bankruptcy Court finding that they failed to prove that they were damaged as the result of fraud allegedly committed by Debtor James Gilmartin. For the reasons that follow, we REVERSE AND REMAND.

## PROCEDURAL BACKGROUND

The Bauers filed an adversary complaint against the Gilmartins in their bankruptcy case, seeking a determination that the Gilmartins' debt to them in connection with a real estate venture was nondischargeable under § 523(a)(2)(A) and (a)(4). At the conclusion of the Bauers' case at trial, the Bankruptcy Court entered judgment in favor of the Gilmartins based on partial findings, pursuant to Federal Rule of Civil Procedure 52(c). That rule authorizes the Court to enter judgment against a party which has been "fully heard" on a necessary element of its proof, during a nonjury trial, if the Court finds against that party as to that element.[2] Such

---

[2] Rule 52(c) provides:

> **(c) Judgment on Partial Findings.** If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7052.

finding may be made even if the party has established a prima facie case, based on the court's evaluation of the evidence and determinations regarding credibility.[3]

In its ruling from the Bench, the Bankruptcy Court concluded that the Bauers had not proven nondischargeability under § 523(a)(4), nor had they proven that they were damaged as a result of the Gilmartins' alleged fraud, a necessary element of § 523(a)(2)(A).  The Bauers appeal only as to James Gilmartin, and only as to the ruling under § 523(a)(2)(A).  Thus, the sole question before us is whether the Bankruptcy Court erred in finding that the Bauers did not prove they were damaged as a result of any fraud which may have been committed by James Gilmartin.

## STANDARD OF REVIEW

The standard of appellate review on a judgment on partial findings is the same as any other non-jury case.[4]  We thus review the Bankruptcy Court's findings of fact under Rule 52(c) for clear error, and its legal conclusions *de novo*.[5]  Since we hold that the Bankruptcy Court did not consider all applicable measures of damages, we do not review its factual findings.  The following facts are provided based on the

---

[3] *See* 9 James Wm. Moore *et al*., *Moore's Federal Practice* § 52.51 (3d ed. 2011).  Counsel for both parties have at times referred to the Court's judgment as being based on a "directed verdict."  While that term was once used as to jury cases, Federal Rule of Civil Procedure 50 was amended in 1991 to retitle "directed verdicts" as "judgments as a matter of law."  *See Williams v. Mueller*, 13 F.3d 1214, 1215 n. 1 (8th Cir. 1994). Judgment as a matter of law is proper if there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmovant under controlling law.  9 *Moore's Federal Practice* at § 50.60[1].  This being a court-tried case, judgment as a matter of law under Rule 50 does not apply.

[4] *Id.* at § 52.52[1].

[5] *Minnesota Laborers Health and Welfare Fund v. Scanlan*, 360 F.3d 925, 927 (8th Cir. 2004).

allegations in the pleadings and the evidence which was offered at trial and is not disputed.

## FACTUAL BACKGROUND

The Gilmartins and Bauers were close personal friends. Larry Bauer was an attorney, and James Gilmartin had many years of experience in real estate development and sales. In 2006, the Gilmartins and Bauers formed a limited liability company known as Gilmartin-Bauer LLC for the purpose of acquiring and developing real property. Although Larry Bauer prepared Articles of Organization and filed them with the Missouri Secretary of State, there were no written operating agreements or contracts between the parties in connection with this endeavor. According to the Bauers, however, they had orally agreed that the two families would make equal cash contributions and would share profits and losses equally. The Bauers and Gilmartins made initial capital investments of $20,000 and $16,800, respectively.

Shortly after the LLC was formed, it purchased an existing apartment building located in Kirkwood, Missouri, which the parties planned to replace with a new four-unit condominium (the "Kirkwood Project"). In addition, in mid-2007, the LLC purchased a single-family residential property in Webster Grove, Missouri, which they planned to tear-down and rebuild (the "Webster Grove Project").

The LLC obtained two loans from Regions Bank for these projects: the first in the amount of $1.36 million, and a second in the amount of $465,000. Both loans were personally guaranteed by both the Bauers and the Gilmartins.

Larry Bauer was not involved in the day-to-day operations of the LLC. James Gilmartin bore the responsibility of the day-to-day management, including the supervision of the construction projects and maintaining the LLC's records and finances. The parties agree that, in exchange for his duties with the LLC, James

Gilmartin was to receive monthly compensation. They disagree as to whether such monthly compensation was to extend for more than a year if the projects had not been completed.

While the projects were under construction, the Gilmartins were experiencing cash flow problems in their personal finances. According to the Bauers, they loaned the Gilmartins nearly $30,000 in 2006 and 2007. In addition, James Gilmartin called upon the Bauers on several occasions to infuse additional funds into the LLC, which they did. And, because they had allegedly been advised by James Gilmartin of cost overruns on the projects, the Bauers took out a $330,000 second mortgage on their home and turned all of that money over to the LLC between August 2008 and December 2008. The Gilmartins' cash flow problems prevented them from investing any additional capital into the LLC after the initial capital investment.

Meanwhile, the Bauers contend that unbeknownst to them, James Gilmartin was taking unauthorized funds out of the LLC to pay for personal expenses, in addition to any supervisory fees they had agreed to. According to the Bauers, James Gilmartin withdrew over $200,000 in unauthorized funds during 2007 and 2008. Toward the end of December 2008, Regions Bank began calling the Bauers regarding delinquent loan payments. In response, the Bauers obtained the bank account records in January 2009 and learned – for the first time, according to them– of the unauthorized withdrawals. Larry Bauer took over management of the LLC at that point.

Ultimately, the Webster Grove Project was sold at a loss, and Regions Bank commenced foreclosure on the Kirkwood Project. The Gilmartins filed a Chapter 7 bankruptcy petition on March 5, 2010. While the Bauers remain liable on their bank guaranties in connection with these projects, they allege here that they would not have continued to invest funds in the project, including those from the second mortgage

on their home, had they known that James Gilmartin was using such funds for unauthorized purposes.

## DISCUSSION

§ 523(a)(2)(A) provides an exception to discharge of any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, false representation, or actual fraud . . . ."[6]

In order to prevail on a nondischargeability cause of action for actual fraud under § 523(a)(2)(A), the Bauers must prove, by a preponderance of the evidence: (1) that James Gilmartin made representations; (2) that at the time he made the representations he knew they were false; (3) that he made such representations with the intention and purpose of deceiving the Bauers; (4) that the Bauers justifiably relied on such representations; and (5) that the Bauers sustained the alleged loss and damages as a proximate result of the representation having been made.[7]  Fraud by omission can form the basis for nondischargeability under § 523(a)(2)(A).[8]

The linchpin of the Bankruptcy Court's Judgment in this case is the finding that the Bauers failed to prove the fifth element – that they sustained a loss as a proximate result of James Gilmartin's alleged misrepresentations.  There is no dispute that the Bauers lost money on this venture.  The question for purposes of this appeal is whether any of their loss was the proximate result of the alleged misuse of funds.  The

---

[6] 11 U.S.C. § 523(a)(2)(A).

[7] *See In re Ophaug,* 827 F.2d 340 (8th Cir. 1987), as modified by *Field v. Mans*, 519 U.S. 59, 116 S. Ct. 437, 444, 133 L.Ed.2d 351 (1995).

[8] *Merchants Nat'l Bank of Winona* (*In re Moen*), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) ("A debtor's silence regarding a material fact may constitute a false representation actionable under section 523(a)(2)(A).").

Bankruptcy Court phrased the Bauers' resulting damage argument as "but for the taking of the money without our permission, the LLC would have been profitable, and I would have – [Regions] Bank would have been paid, and I would have gotten back all of the money that I put into this company, this LLC." The Court then found that there simply was no evidence to support that conclusion. In other words, the Court concluded that since the Bauers had failed to prove that the venture would have otherwise been successful absent the alleged misuse of funds, there were no damages resulting from such misuse.

The Bauers assert that the Bankruptcy Court failed to consider their alternate damage argument, namely, that they would not have invested money into the LLC in the first place, or they would have ceased putting new money in, had they known that James Gilmartin was taking money out for his own use.

This argument was raised before the Bankruptcy Court, but not considered as part of the resulting damage element. Specifically, the Complaint alleged that the Bauers "would not have funded the LLC or entered into an agreement with Gilmartin without [believing that] Plaintiffs' money was being spent solely on legitimate LLC construction purposes."[9] Also, in their Trial Brief filed in the Bankruptcy Court, the Bauers argued that "[t]he evidence will show that the Gilmartin's [sic] engaged in fraud to convince the Bauer's [sic] to invest their money in the LLC and to borrow to fund the LLC. But for the fraud, the Bauer's [sic] would not have invested any money or borrowed any money."[10] In addition, Larry Bauer testified at trial that, "We would not have invested a penny or borrowed a penny had we known that the whole thing was a fraud from the very beginning. . . . We want every dollar we put in, every

[9] Complaint at ¶ 20, *Bauer v. Gilmartin* (*In re Gilmartin*), Ch. 7 Case No. 10-42094, Adv. No. 10-4365 (Bankr. E.D. Mo. Aug. 12, 2010).

[10] Plaintiffs' Trial Brief at 5, *Bauer v. Gilmartin* (*In re Gilmartin*), Ch. 7 Case No. 10-42094, Adv. No. 10-4365 (Bankr. E.D. Mo. Feb. 18, 2011).

dollar we borrowed, and every dollar we owe . . . .  Because it was fraudulent from day one . . . ."[11]

Although the primary measure of damages for fraud in Missouri is the benefit of the bargain, as applied by the Bankruptcy Court, alternate measures are available when the bargain theory does not accurately measure the loss sustained.[12]  Under certain circumstances, an "out of pocket" measure of damages, such as that alleged by the Bauers here, is authorized.[13]  The Bauers offered evidence that they would not have invested any money in the first place, or that they would not have continued to invest funds, had they known of James Gilmartin's alleged fraud.  Since the Bankruptcy Court found against them on the damages issue without considering whether the "out of pocket" measure of damages is applicable, we reverse and remand.

---

[11]  Transcript of Trial at 75-76.  In discussing the other elements of § 523(a)(2)(A), the Bankruptcy Court did describe the crux of the Bauers' case as "[w]e never would have loaned the LLC money had we known it was going to be stolen or taken out without our permission . . . ."  Transcript at 131.  However, the Court did not discuss this as part of its analysis of the resulting damage element.

[12] *Glass Design Imports, Inc. v. Import Specialties,* 867 F.2d 1139, 1143 (8th Cir. 1989).

[13] *Id.  See also Central Microfilm Serv. v. Basic/Four Corp.*, 688 F.2d 1206, 1220(8th Cir.1982), *cert. denied,* 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436(1983).