BETH PHILLIPS, JUDGE
Plaintiffs' Second Amended Complaint alleges that Defendant advertised a sale *834 price on a fishing rod and reel combination ("the rod/reel combo") despite knowing that it had insufficient quantities to satisfy the anticipated demand, and that Defendant did not advise that quantities were limited or offer rainchecks or substitutions. Plaintiffs, on behalf of themselves and either a nationwide class or a series of subclasses, assert statutory and common law claims. Defendant has filed a Motion to Dismiss. (Doc. 52.) Defendant's Motion is GRANTED.[1]
I. BACKGROUND
The Second Amended Complaint alleges the following facts, all of which are construed in the light most favorable to Plaintiff and deemed as true for purposes of this Order. Defendant markets and sells hunting, fishing, and outdoor gear on its website and at eighty-two retail stores across the United States and Canada. (Doc. 47, ¶¶ 8-9.) It conducts an annual event called the Spring Fishing Classic, ("the Classic"), during which it offers seminars and demonstrations and runs sales on merchandise. (Doc. 47, ¶¶ 14-15.) Defendant distributes marketing materials for the Classic via mail, broadcast media, and the internet. (Doc. 47, ¶ 19.)
For the 2018 Classic, one of the items Defendant advertised for sale was the rod/reel combo. (Doc. 47, ¶¶ 32-34.) The advertisement did not state that rainchecks would not be offered or that supplies were limited, and Plaintiffs allege that Defendant knew that it had an insufficient number of rod/reel combos to satisfy expected demand. (E.g. , Doc. 47, ¶¶ 45-46, 48-49, 51-53, 55-59.) Defendant also refused to allow customers to buy the rod and reel separately at the sale price or permit any substitutions. (Doc. 47, ¶¶ 80-81.)
Plaintiffs went to Defendant's retail establishments to purchase the rod/reel combo but could not do so because Defendant had none in stock. They made other purchases at Defendant's stores, although they do not allege what product(s) they purchased. (See Doc. 47, ¶ 82.) They bring this suit on behalf of themselves and a class of other consumers who (1) received the advertisement for the rod/reel combo, (2) were unable to purchase the rod/reel combo, and (3) purchased something else from Defendant. The Second Amended Complaint asserts the following claims:
Count I Violation of the Missouri Merchandising Practices Act[2]
Count II Violation of the Arizona Consumer Fraud Act[3]
Count III Unjust Enrichment
Count IV Violation of consumer protection statutes in other states
Count V Fraud
Defendant contends that Plaintiffs' individual claims (Counts I, II, III and V) must be dismissed for failure to state a claim, and that Count IV should be dismissed for lack of standing. Plaintiffs argue that their individual claims are legally viable so none of the five counts should be dismissed. The Court resolves the parties' arguments below.
II. DISCUSSION
When considering a motion to dismiss for failure to state a claim under Rule *835 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." Stodghill v. Wellston School Dist. , 512 F.3d 472, 476 (8th Cir. 2008).
To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quotations and citations omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. E.g., Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Horras v. American Capital Strategies, Ltd. , 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.
A. Count I - The Missouri Merchandising Practices Act
The Missouri Merchandising Practices Act, ("the MMPA"), prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ...." Mo. Rev. Stat. § 407.020.1. The Missouri Attorney General has enforcement and rulemaking authority under the MMPA, e.g. , Mo. Rev. Stat. §§ 407.040, 407.100, 407.145, and "[t]he principal thrust of Chapter 407 is directed toward authorizing the Attorney General to enjoin those who sell or attempt to sell merchandise from using unlawful practices." Jackson v. Charlie's Chevrolet, Inc. , 664 S.W.2d 675, 677 (Mo. Ct. App. 1984). In certain circumstances, private individuals may also assert claims under the MMPA. To state a private cause of action under the MMPA a plaintiff must show that (1) he purchased merchandise; (2) he purchased the merchandise for personal, family, or household use; (3) he suffered an ascertainable loss; and (4) the ascertainable loss was caused by a violation of the MMPA. Mo. Rev. Stat. § 407.025.1 ; Hess v. Chase Manhattan Bank, USA, N.A. , 220 S.W.3d 758, 773 (Mo. 2007) (en banc.).
Defendant's arguments focus on the first, third, and fourth elements, and its arguments are related to each other. The Court begins by briefly discussing the first element because it sets the framework for the rest of the analysis. "By the language of § 407.025, the legislature provided a cause of action for one who purchases, not one who attempts or offers to purchase.... One who attempts to purchase, but who never receives the goods or services nor pays anything of value cannot be said to have suffered damage by reason of any unlawful practice."
*836 Jackson , 664 S.W.2d at 677. Plaintiffs do not deny that they are required to have consummated a transaction. They also do not deny that they did not purchase the rod/reel combo; indeed, the entire premise of their lawsuit is that they were unable to do so. They instead contend that they have satisfied the first element by alleging that they purchased other merchandise. However, by relying on the purchase of other merchandise, Plaintiffs are unable to establish the other elements for an MMPA claim.
First, Plaintiffs do not allege a sufficient connection between their transactions and the alleged MMPA violation. "The use of an unlawful practice is a violation of the MMPA whether committed before, during or after the sale, so long as it was made 'in connection with' the sale. " Conway v. CitiMortgage, Inc. , 438 S.W.3d 410, 414 (Mo. 2014) (en banc) (emphasis added). The need for a causal connection between the alleged violation and the transaction is buttressed by the statute, which provides a private right of action to anyone who engages in a transaction "and thereby suffers an ascertainable loss ... as a result of " a violation of the MMPA. Mo. Rev. Stat. § 407.025.1 (emphasis added). Plaintiffs generally allege that Defendant intended to increase the number of customers in its stores and on its website, and thereby increase its sales.[4] However, even if this is true, this does not establish a sufficient connection between Plaintiffs' transactions and the MMPA violation. Plaintiffs either (1) went to Defendant's store intending to buy the rod/reel combo and other goods or (2) went to Defendant's store and once there saw other goods they wished to purchase. Either way Plaintiffs had reasons for buying merchandise that were independent of the MMPA violation, and the fact that those decisions were independent means that their transactions were not connected to the MMPA violation - or at least, not sufficiently connected to permit a private claim for the violation.
Plaintiffs rely on Raster v. Ameristar Casinos, Inc. , 280 S.W.3d 120 (Mo. Ct. App. 2009), which they describe as holding that the plaintiff in that case could "state[ ] a claim under the MMPA, even though the plaintiff purchased something other than what the casino advertised." (Doc. 63, p. 7.) The Court does not agree with this interpretation of Raster . In that case, a casino established a compensation program that awarded points based on the volume of the customer's betting activity, and those points could be redeemed for cash, food, and other benefits. Raster , 280 S.W.3d at 123. The casino changed the program by, among other things, retroactively changing the number of points required to earn cash and other benefits. Id. at 123-24. The plaintiff alleged that these changes violated the MMPA and the casino argued, among other things, that the plaintiff had not made a purchase. The Missouri Court of Appeals held that a "casino player, by dropping a token into the machine, is purchasing the intangible chance of winning or, in other words, the intangible right to a product upon the happening of certain conditions." Id. at 131. However, this decision does not aid Plaintiffs because the casino's alleged MMPA violation was connected to the plaintiff's bet; specifically, placement of a bet (the purchase) also earned the plaintiff points under the compensation program, and the casino allegedly violated the MMPA by retroactively changing the program's terms. In contrast, Plaintiffs' do not allege that there was anything deceptive, *837 fraudulent, or unfair about the transaction that actually occurred.
The Second Amended Complaint also does not establish that Plaintiffs suffered an ascertainable loss as a result of the alleged MMPA violation. "A plaintiff adequately pleads this element of an MMPA claim if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." Murphy v. Stonewall Kitchen, LLC , 503 S.W.3d 308, 313 (Mo. Ct. App. 2016) ; see also Plubell v. Merck & Co. , 289 S.W.3d 707, 715 (Mo. Ct. App. 2009) ; Sunset Pools of St. Louis, Inc. v. Schaefer , 869 S.W.2d 883, 886 (Mo. Ct. App. 1994) (citing Heberer v. Shell Oil Co. , 744 S.W.2d 441, 443 (Mo. banc 1988) ). Plaintiffs do not contend that they failed to receive the benefits they bargained for in the transactions that they consummated with Defendant. Instead, they elide this requirement by suggesting that they may have "purchas[ed] merchandise they only became inclined to buy because they were standing in [Defendant's] store being bombarded by merchandising messaging." (Doc. 63, p. 10.)[5] However, the Second Amended Complaint does not allege that Defendant engaged in any tactics that coerced them into buying goods, or that Defendant otherwise overbore their will. Even now, Plaintiffs do not allege that they do not want the goods that they purchased. Finally, and most importantly - Plaintiffs' argument does not establish that they failed to receive the benefit of the transactions that occurred.
Plaintiffs alternatively argue that they suffered ascertainable loss because their vehicles consumed fuel and incurred wear and tear when they drove to Defendant's store. Plaintiffs offer no legal authority suggesting that this can constitute ascertainable loss within the meaning of the MMPA, and given the Missouri cases equating "ascertainable loss" with the "benefit of the bargain" rule, the Court does not believe this theory is viable. Moreover, this "loss" is not connected to Plaintiffs' transactions with Defendant, as demonstrated by the fact that such costs would have been incurred by anyone driving to the store regardless of whether they purchased anything; accepting this theory would make the existence of a coincidental transaction sufficient and undermine the requirement that a transaction occur.[6] Finally, the Court is not persuaded that these expenses constitute losses. Plaintiffs allege that they bought other goods from Defendant, and as discussed earlier one of two things is true: either they bought (1)
*838 something that they planned to buy before going to Defendant's store, or (2) something that they saw while in the store. In the former situation, Plaintiffs would have incurred fuel costs in order to get to the store to buy the other item(s) they intended to purchase. In the latter situation, Plaintiffs engaged in a transaction to buy something that they desired, and there is no suggestion that their decisions were involuntary or that Defendant engaged in prohibited conduct in connection with those transactions. Thus, Plaintiffs' fuel costs are incidental to a transaction that they desired to enter and are not properly considered damages.
The Court's discussion does not mean that Defendant did not violate the MMPA; given the procedural posture the Court has assumed that a violation existed. The Court's discussion also does not mean that such a violation is incapable of being remedied; as stated earlier, the Attorney General can enforce the MMPA, and the Attorney General's enforcement power does not depend on the existence of a transaction or ascertainable damage, much less a connection between the MMPA violation and the transaction and damage.[7] However, these are requirements for a private action. Plaintiffs purchased merchandise from Defendant, but there is an insufficient nexus between the alleged MMPA violation and the transactions. Moreover, they have not suffered an ascertainable loss because they received the benefit of their bargains and the losses they allege are not related to their transactions. For these reasons, Count I fails to state a claim.
B. Count II - The Arizona Consumer Fraud Act
The Arizona Consumer Fraud Act, ("the ACFA"), is similar to the MMPA in that it provides as follows:
The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful.
Ariz. Rev. Stat. Ann. § 44-1522. The ACFA does not explicitly create a private right of action, but the Arizona Supreme Court, relying on § 44-1533 of the Arizona statutes, held that the ACFA "contemplates that a person who has been damaged by the practices declared to be unlawful may exert a claim by reason of such acts." Sellinger v. Freeway Mobile Home Sales, Inc. , 110 Ariz. 573, 521 P.2d 1119, 1122 (1974).
As the quote from Sellinger suggests, a private claim under the ACFA requires that the plaintiff suffered damage related to the violation. This point is confirmed by § 44-1533, which formed the basis for Sellinger 's holding. Section 44-1533 provides that the ACFA "shall not bar any claim against any person who has acquired any monies or property ... by means of any practice declared to be unlawful by" the ACFA. Ariz. Rev. Stat. § 44-1533 (emphasis supplied). Other court decisions confirm this point. E.g., Haisch v. Allstate Ins. Co. , 197 Ariz. 606, 5 P.3d 940, 944 (Ariz. Ct. App. 2000) ("[I]n one way or another, the [ACFA violation] on which liability is predicated must be logically related to the transaction in which it occurs ....");
*839 Holeman v. Neils , 803 F.Supp. 237, 242 (D. Ariz. 1992) (citing Dunlap v. Jimmy GMC of Tucson, Inc. , 136 Ariz. 338, 666 P.2d 83, 87 (Ariz. Ct. App. 1983) ) (elements of claim include a violation of the ACFA "in connection with the sale or advertisement of merchandise" and "actual damages suffered as a result of the unlawful act or practice."). In these respects the ACFA is similar to the MMPA. Plaintiffs do not contend otherwise and seem to agree with this point. (See Doc. 63, pp. 11-12 & n.4.) Therefore, for the reasons stated in Part II.A above, the Court concludes that Plaintiffs have not stated a claim under the ACFA.
C. Count III - Unjust Enrichment
In Missouri, unjust enrichment has three elements: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." Binkley v. Am. Equity Mortg., Inc. , 447 S.W.3d 194, 199 (Mo. 2014) (en banc) (quotation omitted). "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center , 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) ; see also Miller v. Horn , 254 S.W.3d 920, 924 (Mo. Ct. App. 2008). Unjust enrichment under Arizona contains similar elements. See, e.g., Wang Elec., Inc. v. Smoke Tree Resort, LLC , 230 Ariz. 314, 283 P.3d 45, 49 (Ariz. Ct. App. 2012).[8] And, under the laws of both states, retention of the benefit is not unjust if the parties received what they intended to obtain. E.g., Howard v. Turnbull , 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (Missouri law); American Standard Ins. Co. of Wisconsin v. Bracht , 103 S.W.3d 281, 293 (Mo. Ct. App. 2003) (Missouri law); Flooring Sys., Inc. v. Radisson Group, Inc. , 160 Ariz. 224, 772 P.2d 578, 581 (1989) (Arizona law); Freeman v. Sorchych , 226 Ariz. 242, 245 P.3d 927, 936-37 (Ariz. Ct. App. 2011) (Arizona law); see also City of Sierra Vista v. Cochise Enterprises, Inc. , 697 P.2d 1125, 1131-32 (Ariz. Ct. App. 1984) (Arizona law).
Defendant argues that when Plaintiffs entered a transaction and paid money, they received the goods that they bargained for. Thus, for instance, if a plaintiff paid money for a cooler, he received a cooler and Defendant's retention of the purchase price is not unjust. Plaintiffs do not dispute this point; instead, they argue that being lured (no pun intended) into the store conferred a benefit on Defendant, and that this benefit was unjust. However, Plaintiffs' presence in the store was a benefit to Defendant only because it culminated in a business transaction - so Plaintiffs' theory is still ultimately based on voluntary transactions in which both parties received the benefits that they anticipated and bargained for. And, because the parties received the benefits they bargained for, there is no unjust enrichment. Plaintiffs also argue that they did not receive the "benefit" that they intended to receive, which was a discounted price on the rod/reel combo. However, Plaintiffs did not pay anything for a rod/reel combo, nor did they provide any benefit to Defendant to receive the rod/reel combo (other than, as stated, a completely different transaction, which equally benefitted Plaintiffs). The facts alleged simply do not support an unjust enrichment claim under Missouri or Arizona law.
*840 D. Count IV - Claims Under Other States' Consumer Protection Statutes
Count IV relates to Plaintiffs' efforts to seek class certification, and asserts claims under the consumer protection statutes in approximately thirty states, including Missouri and Arizona.[9] Plaintiffs do not personally have claims under the laws of states other than Missouri and Arizona, and purport to be able to represent consumers in those states because the statutes are similar. However, as discussed above Plaintiffs' statutory claims are being dismissed, so they lack standing to assert claims on behalf of other consumers under other states' laws. Therefore, Count IV is also dismissed.
E. Count V - Fraud
Under Missouri law, a claim of fraudulent misrepresentation contains nine elements:
(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.
Hess v. Chase Manhattan Bank, USA, N.A. , 220 S.W.3d 758, 765 (Mo. 2007) (en banc). A claim of fraudulent nondisclosure is similar; in such a case, "a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation." Id. Arizona law requires the same elements for fraud. E.g., Comerica Bank v. Mahmoodi , 224 Ariz. 289, 229 P.3d 1031, 1034 (Ariz. Ct. App. 2010). However, in contrast with Missouri law, under Arizona law "a party may be liable for acts taken to conceal, mislead or otherwise deceive, even in the absence of a fiduciary, statutory, or other legal duty to disclose." Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund , 201 Ariz. 474, 38 P.3d 12, 21 (2002). The Second Amended Complaint asserts that Defendant's advertisements falsely represented the rod/reel combo's availability and omitted the material fact that there were insufficient quantities to meet expected demand. The Court will focus on Defendant's argument that the Second Amended Complaint does not allege that Plaintiffs suffered recoverable damages resulting from these misrepresentations and omissions.[10]
"The traditional benefit of the bargain measure is the general rule in Missouri," but "[a]n alternate measure is permitted ... where the bargain theory would not accurately measure the loss sustained." Glass Design Imports, Inc. v. Import Specialties , 867 F.2d 1139, 1143 (8th Cir. 1989). When circumstances warrant, *841 costs incurred in reliance on the fraud may be recovered. Id. Arizona law is similar. E.g., Ashley v. Kramer , 8 Ariz.App. 27, 442 P.2d 564, 568 (Ariz. 1968) ; Cole v. Gerhart , 5 Ariz.App. 24, 423 P.2d 100, 102 (1967).
Plaintiffs do not contend that they have any "benefit of the bargain" damages - and they likely do not, as their "bargain" involved the purchase of other goods and, as stated earlier they do not claim anything untoward in those transactions. Instead, Plaintiffs argue that their purchase of other goods constitute out of pocket expenses that can be recovered. (Doc. 63, pp. 19-20.) The Court disagrees; the Second Amended Complaint does not allege that they paid more than fair value for the goods they received, that they did not independently desire to purchase the goods in question, or that the goods they purchased were rendered unusable because of Defendant's alleged fraud.[11] Plaintiffs also argue that they can recover for the time and money expended to travel to Defendant's store. For the reasons stated previously, (see Pages 7-8, infra ), the Court holds that these expenses are not "damages" suffered by Plaintiffs.
IV. CONCLUSION
For the reasons stated herein, Defendant's Motion to Dismiss, (Doc. 52), is GRANTED. Counts I, II, III, and V are dismissed for failure to state a claim. Count IV is dismissed without prejudice for lack of standing.
IT IS SO ORDERED.

Defendant's motion also asks the Court to strike the Second Amended Complaint's class allegations. In light of the Court's ruling, there is no need to address these arguments.

Count I is brought on behalf of Plaintiffs Anderson, Gonzalez and Wiley because they purchased goods from Defendant in Missouri.

Count II is brought on behalf of Plaintiff Ashcraft because he purchased goods from Defendant in Arizona.

They also allege, in a conclusory manner, that their purchases were made "in connection with" Defendant's advertising. (E.g. , Doc. 47, ¶¶ 71, 82.) This is a legal conclusion that Iqbal provides is not entitled to deference. Iqbal , 556 U.S. at 678, 129 S.Ct. 1937.

At various times in their Suggestions in Opposition, Plaintiffs allege that they would not have made their purchases if Defendant had not advertised the rod/reel combo. (E.g. , Doc. 63, pp. 10, 20.) This fact is not clearly alleged in the Second Amended Complaint. (But see Doc. 47, ¶ 70.) As discussed in the text, however, regardless of whether Plaintiffs went to Defendant's store already intending to buy other items, their transactions were not connected to the alleged MMPA violation and their voluntary purchases of other goods do not constitute losses attributable to that violation.

In the Second Amended Complaint, Plaintiffs also alleged that their lost opportunity to buy the rod/reel combo at the sale price was an ascertainable loss. (Doc. 47, ¶ 128(a).) The allegation that this constitutes ascertainable loss is a legal argument not a factual averment, so the Court need not defer to it. Plaintiffs also did not argue this theory in response to the Motion to Dismiss, (see Doc. 63, pp. 10-11), and the Court does not believe that it is viable. The lost opportunity to buy the rod/reel combo is not related to the transaction that Plaintiffs engaged in, as demonstrated by the fact that it is a "loss" that would have been suffered by everyone who wanted to buy the rod/reel combo, regardless of whether they also engaged in another transaction with Defendant.

The Court notes that the Attorney General has enacted regulations addressing "bait and switch" sales tactics. Mo. Code Regs. Tit. 15, §§ 60-7.080, 60-7.090.

Plaintiffs do not discuss Arizona law with respect to Counts III and V; the Court elects to do so out of an abundance of caution.

The precise number of states may be in doubt because it appears that Plaintiffs intended to allege claims under Iowa's and Ohio's statutes, (Doc. 47, ¶ 101), but those states are not mentioned in Count IV.

Defendant also argues that it had no duty under Missouri law to divulge the omitted information. However, (1) Arizona law does not appear to require that there be a duty and (2) Plaintiffs allege that Defendant's advertisements also constituted misrepresentations. In its Reply Suggestions Defendant argues that the Second Amended Complaint does not satisfy Rule 9(b)'s heightened pleading requirement for pleading fraudulent misrepresentations, but the Court does not ordinarily address arguments raised for the first time in a party's reply suggestions. For these reasons, the Court will not discuss these arguments further.

The Court notes that Plaintiffs do not seek to rescind their transactions; they seem to allege that they are entitled to recover the purchase price for the goods they bought and keep those goods. This would not be an appropriate measure of damages under the facts alleged in the Second Amended Complaint.